# UNITED STATES BANKRUPTCY COURT
# FOR THE NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| In Re: | ) |
| | ) **JUDGE RICHARD L. SPEER** |
| Victoria Ann Bennett | ) |
| | ) Case No. 09-3160 |
| Debtor(s) | ) |
| | ) (Related Case: 09-32253) |
| Linda Schroeder | ) |
| | ) |
| Plaintiff(s) | ) |
| | ) |
| v. | ) |
| | ) |
| Victoria Ann Bennett | ) |
| | ) |
| Defendant(s) | ) |

## DECISION AND ORDER

This cause comes before the Court after a Trial on the Plaintiff's Complaint to Determine Dischargeability. The Plaintiff's Complaint is brought pursuant to the statutory exception to dischargeability set forth in 11 U.S.C. § 523(a)(2)(A). At the Trial, the Parties were each given the opportunity to present evidence and make arguments that they wished the Court to consider in reaching its decision. At the conclusion of the Trial, this Court deferred ruling on the matter so as to afford the opportunity to thoroughly review the evidence presented, the arguments of the Parties, as well as the entire record in this case. The Court has now had this opportunity and, for the reasons set forth herein, finds the Plaintiff's Complaint to have merit.

Linda Schroeder v. Victoria Ann Bennett
Case No. 09-3160

## BACKGROUND

In 2007, the Plaintiff, Linda Schroeder, purchased a membership in a health/fitness club, operating under the name of Body Mechanics. The purchase of the membership allowed the Plaintiff access to the club's facilities which consisted mainly of exercise equipment. At the time she became a member, Body Mechanics was an operating limited liability company, owned by three parties including the Defendant, Victoria Ann Bennett, who managed the business.

Not long after becoming a member of Body Mechanics, the Plaintiff was approached by the Defendant, and another owner, concerning a business arrangement with the health/fitness club. This arrangement would involve the Plaintiff making a capital contribution to Body Mechanics in the sum of $10,000.00; in exchange, the Plaintiff would receive an ownership interest in the business.

The Plaintiff agreed to this arrangement, subsequently delivering to the Defendant, personally, three checks for the aggregate sum of $10,000.00. These checks, written during the months of September and October of 2007, were made payable to Body Mechanics, LLC, with the funds being deposited into an account used by the business. (Doc. No. 39, Ex. 1). Around this same period of time, the Plaintiff began to work at Body Mechanics as an unpaid employee during which time the Plaintiff and the Defendant saw each other on an almost daily basis.

After making her capital contributions, an operating agreement was produced, setting forth that the Plaintiff, along with the existing three owners of Body Mechanics, would each have a 25% ownership interest in the business. (Doc. No. 39, Ex. 2). However, this operating agreement, which was drafted by a relative of the Defendant, was never executed by the Plaintiff or any of the existing owners of Body Mechanics. Not long thereafter, a second, revised operating agreement was drafted.

Page 2

Linda Schroeder v. Victoria Ann Bennett
Case No. 09-3160

      The terms of the second operating agreement were substantially the same as the first agreement, but with these notable exceptions: the anticipated ownership interest of the Plaintiff in Body Mechanics was decreased to 15%, while the anticipated ownership interest of the Defendant in the business was increased to 30%. The second agreement was executed by the Plaintiff and one of the other owners of Body Mechanics. (Doc. No. 39, Ex. 2). Neither the Defendant nor the remaining owner, however, ever executed the second operating agreement or any other instrument evidencing a transfer of interest. As a result, the Plaintiff, despite her capital contributions, never obtained any ownership interest in Body Mechanics.

      After making multiple inquiries to the Defendant regarding her investment, the Plaintiff ultimately severed her business ties with the Defendant and Body Mechanics – an event which may be said to have occurred on January 16, 2008, when the Plaintiff, via a text message, threatened to take legal action against the Defendant. (Doc. No. 39, Ex. 10). Later, in 2008, the Defendant also severed her business ties with Body Mechanics, with the business being sold to a third party. From the sale of the business, the Defendant did not receive any cash proceeds, with the consideration for the sale being limited to the buyer assuming the debts of the business. According to the Defendant, her decision to sell the business was reached after consultation with a small business advisor who, because Body Mechanics was never able to turn a profit, advised her to close the business.

      On April 9, 2009, the Defendant filed a voluntary petition in this Court for relief under Chapter 7 of the United States Bankruptcy Code. The Plaintiff then timely commenced this action, seeking a determination that her claim against the Defendant should be found to be a nondischargeable debt pursuant to 11 U.S.C. § 523(a)(2)(A). At the Trial held on her complaint, the Plaintiff asked that, in addition to a finding of nondischargeability, she be awarded judgment in the amount of $10,000.00, that she be awarded treble damages, and that she be awarded attorney's fees in the amount of $4,989.98.

Page 3

Linda Schroeder v. Victoria Ann Bennett
Case No. 09-3160

## DISCUSSION

Before this Court is the Plaintiff's Complaint to Determine Dischargeability of Debt. Proceedings brought to determine the dischargeability of particular debts are deemed core proceedings pursuant to 28 U.S.C. § 157(b)(2)(I). Accordingly, this Court has the jurisdictional authority to enter final orders and judgments in this matter. 28 U.S.C. § 157(b)(1); § 1334.

The Plaintiff's Complaint to determine dischargeability is brought pursuant to § 523(a)(2)(A) of the Bankruptcy Code. This provision provides:

> (a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt–
>
> > (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by–
> >
> > > (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition[.]

The purpose of this provision is to except from discharge any debt which arises from a debtor's dishonest conduct, thereby implementing a fundamental bankruptcy policy that only those debts which are honestly incurred may be discharged. *EDM Machine Sales, Inc. v. Kay Harrison (In re Harrison)*, 301 B.R. 849, 853 (Bankr. N.D.Ohio 2003).

Yet, to also ensure that the Congressional policy in favor of providing a debtor with a fresh-start is furthered, exceptions to dischargeability, including one brought under 523(a)(2)(A), are narrowly construed. *Ewing v. Bissonnette (In re Bissonnette)*, 398 B.R. 189, 193 (Bankr. N.D.Ohio.2008). Consistent with this, the party seeking to have a debt held nondischargeable bears the overall burden of persuasion to establish the applicability of the asserted statutory exception to

Page 4

Linda Schroeder v. Victoria Ann Bennett
Case No. 09-3160

discharge. *Brandenberger v. Chinnery (In re Chinnery)*, 196 B.R. 836, 837 (Bankr.W.D.Mo.1996). For this purpose, a preponderance of the evidence standard is applied. *Grogan v. Garner*, 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991).

In order to sustain a cause of action under § 523(a)(2)(A), the moving party must establish the existence of the five common law elements of fraud. *Chase Manhattan Bank v. Alnajjar, (In re Alnajjar)*, 276 B.R. 844, 848 (Bankr. N.D.Ohio 2002). These elements are: (1) the debtor made a false representation; (2) the debtor knew such representation to be false at the time they were made; (3) the representation was made with intent to deceive the creditor; (4) the creditor justifiably relied on the representation; and (5) the creditor's loss was the proximate result of the misrepresentation having been made. *Bernard Lumber Co. v. Patrick (In re Patrick)*, 265 B.R. 913, 916 (Bankr. N.D.Ohio 2001).

For the five common-law elements of fraud, the Defendant did not place in controversy the first and fourth elements, a position which is consistent with the evidence which unequivocally shows that the Defendant failed to abide by her promises to make the Plaintiff an owner of Body Mechanics and that the Plaintiff relied on the Defendant's false promise. The Defendant, however, denies that she acted fraudulently, knowing her statements to be false, thereby controverting the second and third elements of a § 523(a)(2)(A) action. The Defendant also set forth that the Plaintiff did not sustain her burden under the fifth element of § 523(a)(2)(A) – requiring a loss be incurred as result of the misrepresentation – because had the Plaintiff become an owner of Body Mechanics she would have ultimately suffered the complete loss of her investment. Both these points are now addressed in order.

Page 5

Linda Schroeder v. Victoria Ann Bennett
Case No. 09-3160

### Intent to Defraud under 11 U.S.C. § 523(a)(2)(A)

At its core, common-law fraud, and by extension fraud under § 523(a)(2)(A), entails a conscious wrongdoing. *United States v. Wunderlich*, 342 U.S. 98, 100, 72 S.Ct. 154, 155, 96 L.Ed. 113 (1951); *Durns v. Dawson (In re Dawson)*, 264 B.R. 13, 16 (Bankr. N.D.Iowa 2001). For purposes of § 523(a)(2)(A), this characteristic is embodied by the second and third elements, *supra*, which together ask whether a debtor, having present knowledge as to the falsity of his or her representation(s), acted with the intent to deceive the plaintiff?

Relying on the Defendant's false promise to make her an owner of Body Mechanics, it is the Plaintiff's position that these requirements are satisfied because, in her words, the "Defendant knew she was making false and fraudulent assertions to Plaintiff, for the express purpose of inducing Plaintiff to invest or pay $10,000.00, for which Defendant knew Plaintiff would not receive value, and at the time Defendant had no intention of making Plaintiff a 25% owner in the LLC, . . . ." (Doc. No. 29, at pg. 2).

It is well-established that the failure to fulfill a promise, standing alone, is not a sufficient ground upon which to base a finding of fraudulent intent for purposes of § 523(a)(2)(A). *Mack v. Mills (In re Mills)*, 345 B.R. 598, 604 (Bankr. N.D.Ohio 2006), citing *Jacobs v. Ballard (In re Ballard)*, 26 B.R. 981, 985 (Bankr. D.Conn.1983). Otherwise, all contractual debts in bankruptcy would be nondischargeable. A finding of fraudulent intent under § 523(a)(2)(A), instead, requires that a creditor show that the debtor had no intent to honor the obligation at the time the debt was incurred. *Clyde-Findlay Area Cr. Union v. Burwell (In re Burwell)*, 276 B.R. 851, 854 (Bankr. N.D.Ohio 2002). On this matter, the Sixth Circuit Court of Appeals has held that "the proper inquiry to determine a debtor's fraudulent intent is whether the debtor subjectively intended to repay the debt." *Rembert v. AT & T Universal Card Servs., Inc. (In re Rembert)*, 141 F.3d 277, 281 (6th Cir. 1998).

Page 6

A subjective inquiry requires the court to look inside the mind of the defendant. A defendant, however, will rarely admit to acting with the requisite intent to defraud. Direct evidence of fraud, from a defendant's testimony, therefore, will not normally be available, making it necessary that the trier-of-fact rely on circumstantial evidence when assessing a defendant's state-of-mind at the time of the alleged deception. *Binger v. Bloomfield (In re Bloomfield)*, 293 B.R. 148, 153 (Bankr. N.D.Ohio 2003). When looking at the available circumstantial evidence, the Sixth Circuit Court of Appeals has held that the "totality of the circumstances" must be weighed and a determination then made whether the evidence "leads to the conclusion that it is more probable than not that the debtor had the requisite fraudulent intent." 141 F.3d at 282, *citing Chase Manhattan Bank v. Murphy (In re Murphy)*, 190 B.R. 327, 332 (Bankr. N.D.Ill. 1995).

Situations giving rise to a subjective finding of fraudulent intent often have common characteristics. Such characteristics, or indicia, are commonly referred to as badges of fraud. While each situation is necessarily fact specific, a common badge of fraud concerns whether a defendant made any effort to perform their obligation. *Chase Bank v. Brumbaugh (In re Brumbaugh)*, 383 B.R. 907, 912 (Bankr. N.D.Ohio 2007). As this Court previously explained: "as a general rule, the greater the extent of a debtor's performance, the less likely it will be that they possessed an intent to defraud." *In re Bissonnette*, 398 B.R. at 194, *citing Anastas v. American Savings Bank (In re Anastas)*, 94 F.3d 1280, 1285 (9th Cir. 1996). *See also Palmacci v. Umpierrez*, 121 F.3d 781, 787 (1st Cir.1997) ("A debtor's statement of future intention is not necessarily a misrepresentation if intervening events cause the debtor's future actions to deviate from previously expressed intentions.").

This indicium works heavily against the Defendant. To fulfill her obligation to the Plaintiff, the Defendant was only required to do one thing: sign an operating agreement, naming the Plaintiff as a part owner of the Body Mechanics. At least two operating agreements were ultimately drafted. Yet, at no time did the Defendant take the simple step of signing either of the operating agreements.

Page 7

Linda Schroeder v. Victoria Ann Bennett
Case No. 09-3160

This omission is particularly indicative of an intent to defraud when it is considered that the evidence in this case is devoid of anything which would tend to suggest that the Defendant was prevented from signing either of the operating agreements. Of initial significance, the facts presented to the Court revealed that the operating agreements were drafted by a relative of the Defendant, lending itself to the conclusion that the Defendant had the ability to exercise some control over the documents. Regardless, the Defendant, as an owner and manager of Body Mechanics, had the legal right to obtain documents pertaining to the business, such as the operating agreement. *See* O.R.C. § 1705.22 (member's access to records of the business). On a similar note, it cannot be ignored that one of the owners of Body Mechanics, along with the Plaintiff, signed the second operating agreement, thus indicating the dissemination of the document to the necessary parties.

It was also established in this case that, after making her capital contributions, the Plaintiff worked for Body Mechanics, often with the Defendant whom the Plaintiff frequently queried regarding the status of the operating agreements. It, therefore, stands to reason that the Defendant, besides having access, if not outright possession, to the operating agreements, had to be keenly aware of her duty to promptly sign one of the agreements.

All said, the evidence before the Court at this particular juncture gives rise to a very strong inference of fraud. In straightforward terms, the evidence before the Court shows that the Defendant promised the Plaintiff an ownership interest in Body Mechanics and then took the Plaintiff's money. Yet, despite having the means and opportunity, the Defendant then failed to perform her end of the bargain – that of transferring an ownership interest in Body Mechanics to the Plaintiff, which only required the Defendant to do the simple act of signing a piece of paper.

In her defense, the Defendant portrayed her business relationship with the Plaintiff as more akin to a passive participant, testifying that it was not her idea to acquire the Plaintiff as a fourth partner. The Defendant, pointing to the Plaintiff's text message sent on January 16, 2008, also called

Page 8

Linda Schroeder v. Victoria Ann Bennett
Case No. 09-3160

attention to the fact that it was the Plaintiff who ultimately terminated the Parties' business relationship.

It stands to reason that any inference of fraudulent intent may be blunted by a defendant showing that they were not an active participant in the conduct giving rise to the allegations of fraud. Thus, to the extent it is true, the Defendant's first position, that her business relationship with the Plaintiff was passive, would operate to cast doubt on any inference of fraudulent intent on the part of the Defendant. Notwithstanding, the evidence does not support the Defendant's portrayal of her relationship with the Plaintiff.

It was the Defendant who first suggested to the Plaintiff the possibility of a business arrangement with Body Mechanics. Thereafter, the details and implementation of this business arrangement were handled almost exclusively by the Defendant. Of particular importance, the Plaintiff's capital contributions, made by way of three checks issued in September and October of 2007, were tendered personally to the Defendant – a fact hardly indicative of a passive participant.

In addition, it was the Defendant who undertook the task of obtaining the necessary legal documents. In particular, it was the Defendant who produced the operating agreements which, as stated earlier, were drafted by a relative of the Defendant. It has also not gone unnoticed that in the second operating agreement, the Plaintiff's proposed ownership in the business was decreased to 15%, while the anticipated ownership interest of the Defendant in the business was increased to 30%. This tends to suggest on the part of the Defendant a level of gamesmanship. At the very least, however, this fact further belies the Defendant's position that her role with regards to the Plaintiff's business investment in Body Mechanics was passive.

The second point raised by Defendant, that the Plaintiff's ultimate severance of her business ties with Body Mechanics mitigates against an intent to defraud, is equally uncompelling. The

Page 9

Linda Schroeder v. Victoria Ann Bennett
Case No. 09-3160

Plaintiff completed her contractual duty, in October of 2007, when she tendered the final check to the Defendant. The Plaintiff, however, did not sever her business ties with the Defendant until much later, on January 16, 2008, and then only after repeated attempts were made to have the Defendant perform her contractual duty, *i.e.*, sign an operating agreement.

Under these conditions, the Plaintiff's severance of her business ties with Body Mechanics seems reasonable. A party, such as the Plaintiff, is not required to wait indefinitely for the other party to perform their contractual obligation, particularly when, as here, the Defendant had at all times the ability to promptly perform, but failed to do so. *See* 17A AM .JUR.2d Contracts 607 (2006) ("if no time is specified in the contract, a reasonable time is presumed, and a party breaches such a contract by not completing the work within a reasonable time.").

In sum, the Defendant, for the benefit of her business, accepted the Plaintiff's money. But thereafter, the Defendant, despite having the ability and ample opportunity, failed to fulfill her contractual duty of transferring to the Plaintiff an ownership interest in her business. The evidence before the Court did not offer any viable justification for the Defendant's conduct. For these reasons, the Court finds that the Plaintiff has shown by a preponderance of the evidence that the Defendant, having present knowledge as to the falsity of her representations, acted with the intent to deceive the Plaintiff, thus sustaining her burden for purposes of the second and third elements of § 523(a)(2)(A).

## Causation under 11 U.S.C. § 523(a)(2)(A)

The fifth element of the common law test for fraud under § 523(a)(2)(A) requires a plaintiff to show that a loss was sustained as a result of the fraud. In this matter, the Defendant acknowledges that the Plaintiff sustained the loss of her $10,000.00 investment. The Defendant, however, takes the position that no actual loss was actually incurred because the business, Body Mechanics, ultimately proved to be unprofitable, meaning that the Plaintiff would have suffered the complete loss of her

Page 10

investment regardless of whether she had been made an owner of the company. The Court, however, must reject the Defendant's position.

First, in determining whether a debt should be excepted from discharge on the basis of a debtor's fraud, the focus should be on the debtor's liability, not on whether the debtor actually profited from the fraudulent scheme. *In re Markarian*, 228 B.R. 34, 45 (B.A.P. 1st Cir. 1998), *citing Cohen v. De La Cruz*, 523 U.S. 213, 118 S.Ct. 1212, 1217, 140 L.Ed.2d 341 (1998). This result flows from the language of the statute.

Section 523(a)(2)(A) excepts from discharge any "debt" "to the extent obtained" by fraud. A debt and the resulting loss thus may be said to arise at the time of the fraud, not at some point subsequent. In a case involving a similar situation, this Court observed that:

> When investing, a person, while undoubtedly assuming the risk that the investment will decline in value, does not assume the risk that the invested funds will be used for purposes unrelated to the investment. As such, the Plaintiff, while she may have assumed the risk that her investment in real estate would not ultimately prove to be profitable, did not assume the risk that the Defendant would fraudulently divert the funds she invested . . .

*Wilhelm v. Finnegan (In re Finnegan)*, 428 B.R. 449, 455 (Banrk. N.D.Ohio 2010).

Even so, the Defendant's position assumes that Body Mechanics would never have been profitable had the Plaintiff been made an owner of the business. While this may have proven to be true, the Defendant's failure to effectuate a transfer of an ownership in Body Mechanics to the Plaintiff, depriving her of any input in the later decision to sell Body Mechanics, makes such an assessment impossible. In this way, while the business had not been profitable up to the time of the sale, had the Plaintiff become an owner of Body Mechanics the end result may have been different. For example, the Plaintiff, instead of selling her interest, may have decided to continue operating the

Page 11

Linda Schroeder v. Victoria Ann Bennett
Case No. 09-3160

business until it became profitable. Who is to say? At the very least, the Court will not permit the Defendant to gain from her wrongdoing, by claiming a defense against the Plaintiff's action for fraud based upon the same conduct giving rise to the fraud.

## Assessment of Damages

At the Trial held on her complaint, the Plaintiff asked that, in addition to a finding of nondischargeability, she be awarded damages as follows: (1) $10,000.00, representing her capital contribution to Body Mechanics; (2) treble damages; and (3) attorney fees in the amount of $4,989.98.

This Court has jurisdiction to award a monetary judgment for a debt held to be nondischargeable. *See Longo v. McLaren (In re McLaren)*, 3 F.3d 958, 965 (6th Cir. 1993); *accord N.I.S. Corp. v. Hallahan (In re Hallahan)*, 936 F.2d 1496, 1507-08 (7th Cir. 1991) (recognizing that the bankruptcy court has jurisdiction to enter a money judgment for the amount of the creditor's claim found to be excepted from discharge); *Snyder v. Devitt (In re Devitt)*, 126 B.R. 212, 215 (Bankr. D.Md. 1991) ("[I]t is impossible to separate the determination of dischargeability function from the function of fixing the amount of the nondischargeable debt."). In entering a monetary judgment, actual damages are allowed as a matter of course which in this matter, based upon the Plaintiff's capital contributions, totals $10,000.00.

The Court, however, must decline the Plaintiff's request for treble damages. This type of an award for damages can only be made if there is a specific statute authorizing such an award. 30 Ohio Jur. 3d Damages § 140. However, neither § 523(a)(2)(A), nor any other statute for which the Court is aware, authorizes the Plaintiff to recover treble damages in this matter.

Page 12

Linda Schroeder v. Victoria Ann Bennett
Case No. 09-3160

The Plaintiff finally asks that she be awarded attorney fees. Awards of attorney fees in bankruptcy cases are governed by the "American Rule." Under the "American Rule," the prevailing litigant is generally not entitled to collect attorney's fees. *See Travelers Casualty & Surety Co. of America v. Pacific Gas & Electric Co.*, 549 U.S. 443, 127 S.Ct. 1199, 1203-04, 167 L.Ed.2d 178 (2007). This default rule, however, can be overcome by statute, contract, or other specific rule of common law authorizing an award of attorney's fees. *Id.* Such a determination is made by reference to whether the successful plaintiff could have recovered attorney's fees in the applicable non-bankruptcy forum, here an Ohio court. *AT&T Universal Card Servs. Corp. v. Pham (In re Pham)*, 250 B.R. 93 (9th Cir. B.A.P. 2000).

Under Ohio law, in situations involving fraud, the trier-of-fact has the discretion to include an amount for "proper and reasonable attorney fees" as a damage award. *Grine v. Sylvania Schools Bd. of Edn.*, Slip Copy, 2008 WL 853519 (Ohio App. 6 Dist.), 2008-Ohio-1562 (citing Ohio Supreme Court decisions). Under the circumstances as they exist here, the Court finds that exercising such discretion, to award attorney fees, is proper. When all the dots in this case are connected, it is apparent that the Defendant has strung the Plaintiff along in this matter for a period of three years, forcing the Plaintiff to bear unnecessary legal costs. As such, the Plaintiff's request for $4,989.98 in attorney fees will be awarded in its entirety.

### Conclusion

For those reasons set forth in this Decision, the Court is persuaded that the Plaintiff has sustained her burden of showing that the Defendant committed fraud within the meaning of 11 U.S.C. § 523(a)(2)(A). The Defendant's obligation to the Plaintiff, consisting of capital contributions totaling $10,000.00 and attorney fees of $4,989.98, is therefore deemed to be a nondischargeable debt in the Defendant's bankruptcy case. In reaching the conclusions found herein, the Court has

Page 13

Linda Schroeder v. Victoria Ann Bennett
Case No. 09-3160

considered all of the evidence, exhibits and arguments of counsel, regardless of whether or not they are specifically referred to in this Decision.

Accordingly, it is

**ORDERED** that, pursuant to 11 U.S.C. § 523(a)(2)(A), any and all claims held by the Plaintiff, Linda Schroeder, against the Defendant, Victoria Ann Bennett, are hereby determined to be NONDISCHARGEABLE DEBTS.

***IT IS FURTHER ORDERED*** that the Plaintiff, Linda Schroeder, is hereby awarded judgment against the Defendant, Victoria Ann Bennett, in the amount of $14,989.98, representing compensatory damages of $10,000.00 and attorney fees in the amount of $4,989.98. Post judgment interest shall accrue as provided in 28 U.S.C. § 1961.

***IT IS FURTHER ORDERED*** that, pursuant to Bankruptcy Rule 9021, the Clerk, United States Bankruptcy Court, shall issue a separate judgment entry in accordance with the above order.

Dated: June 25, 2010

_____
Richard L. Speer
United States
Bankruptcy Judge

Page 14